## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO. JFM-13-078** |
| **IRA TAYLOR** | : | |
| | : | |

**...oOo...**

## GOVERNMENT'S RESPONSE TO DEFENDANT'S PRETRIAL
## MOTIONS TO SUPPRESS EVIDENCE AND EXCLUDE TRIAL TESTIMONY

Now comes the United States of America by its counsel, Rod J. Rosenstein, United States Attorney for the District of Maryland, and Scott A. Lemmon, Assistant United States Attorney for said District, and in response to the pretrial motions filed by the Defendant says:

### I.      PROCEDURAL BACKGROUND

The Defendant, Ira Taylor ("Taylor"), is charged in a three-count indictment alleging that on or about November 13, 2012, he possessed a firearm after having been convicted of a felony in violation of 18 U.S.C. § 922(g)(1), distributed and possessed with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1), and possessed, brandished and discharged a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c).  The indictment was returned by a federal grand jury on February 21, 2013.  *See* ECF 1.  On May 24, 2013, the Defendant filed three motions.  *See* Motion to Suppress Statements (ECF 18); Motion to Suppress Evidence (ECF 19); Motion to Suppress Out-of-Court and In-Court Identifications (ECF 20).

A hearing on the motions is scheduled to occur on August 1, 2013 at 11:00 a.m., and trial is scheduled to begin on September 9, 2013.

## II.     FACTUAL BACKGROUND

Around 10:45 a.m. on November 13, 2012, two officers—Officer Michael Riser and Officer Steven Rosier—were patrolling the 1800 block of Rosedale Street, Baltimore, Maryland, in an unmarked police vehicle.  The officers knew that the area had previously experienced high levels of violence and narcotics activity.  As the officers were patrolling, they observed two males in the street.  The officers drove up to one male, who was later identified as George Spradlin, Jr. ("Spradlin").  Spradlin pointed at the second male, who was later identified as Taylor, and yelled something to the effect of, "He robbed me, he robbed me, he pointed a gun at me!"

Taylor fled from the officers, and the officers pursued him.  Officer Rosier chased Taylor on foot while Officer Riser followed Taylor from the car.  Taylor ran down the street and into an alley, where Officer Rosier ordered Taylor to show his hands.  Taylor did not comply; instead, he continued to flee by climbing over a cinder block wall at the end of the alley.

Officer Riser, who was still in the patrol car, saw Taylor as he ran across a field on the other side of the wall.  Officer Riser was able to see that Taylor had a silver handgun in his hand.  Taylor then ran around a corner and into a second alley.  When Officer Riser lost sight of him, Taylor was still holding the silver handgun.

Officers Riser and Rosier searched the area and located Taylor hiding face down on the ground behind a row of bushes.  The officers arrested Taylor and then saw a silver .38 caliber Smith & Wesson revolver lying under the bushes several feet away from where Taylor was hiding.  Officer Rosier recovered the handgun and determined that it contained four live rounds of ammunition and one spent shell casing.

In a search incident to Taylor's arrest, the officers searched Taylor's pockets and recovered two blue Ziplock bags containing green plant-like material, one folding pocket knife, $85 of balled-up U.S. currency, one silver diamond ring, one black car key, a Maryland state identification card, credit cards, and $19 folded neatly behind the cards.

As the officers were arresting Taylor, Spradlin walked up, pointed at Taylor, and stated something to the effect of, "He's the one, he robbed me." Spradlin informed the officers that on the day of the robbery he had been "hacking," (*i.e.*, operating his car as an unlicensed taxi service) and that Taylor had brandished a firearm and demanded his money. Spradlin gave the money to Taylor, who then ordered Spradlin to get out of his car and walk away. As Spradlin was walking away, Taylor fired the handgun at Spradlin. Spradlin later gave a written statement to police officers.

In an interview with Assistant United States Attorneys, Spradlin stated for the first time that he had attempted to purchase marijuana from Taylor when Taylor saw Spradlin's money, brandished the firearm, and demanded that Spradlin give him all of his money.

III.   **LEGAL ANALYSIS**

Taylor's three motions should be denied.

First, Taylor's Motion to Suppress Evidence asserts that the evidence obtained in connection with his arrest should be suppressed because the officers "did not have reasonable suspicion or probable cause to believe that Taylor was, or had been, involved in criminal activity at the time of his arrest." Motion to Suppress Evidence (ECF 18) at 1. Taylor, however, never submitted to Officer Rosier's command to stop, and so the initial interaction between the officers and Taylor never constituted a *Terry* stop. For that reason, the court need not analyze whether

the officers had any reasonable suspicion to believe criminal activity may have been afoot.

Taylor then abandoned the handgun and ammunition *before* he was seized, and so he does not have standing to seek their exclusion.

Taylor was not seized until he was found and arrested, and so the court need only determine whether there was probable cause to justify that arrest.  Here, there was overwhelming evidence that Taylor had recently committed a crime, including the victim's statement that Taylor had robbed him with a firearm, the victim's identification of Taylor, Taylor's subsequent flight from the officers, Taylor's refusal to comply with Officer Rosier's command to stop and show his hands, and Officer Riser's observation that Taylor was holding a firearm.  Based on those observations, the officers had probable cause to arrest Taylor, and the evidence they later recovered from Taylor's pockets was found in a proper search incident to that lawful arrest.

Second, Taylor seeks to suppress any statements he made to the officers.  *See* Motion to Suppress Statements (ECF 19).  The motion does not identify any statements that were made by Taylor, *see id.* ¶¶ 2–3.  The Government is aware of only one statement made by Taylor: as the officers were arresting him, he said something to the effect of, "Come on, you know I wouldn't rob anyone."

Third, Taylor seeks to suppress Spradlin's out-of-court identifications of Taylor "on the ground that [they were] suggestive and unreliable."  *See* Motion to Suppress Out-Of-Court And In-Court Identification (ECF 20) at 1.  Both of Spradlin's identifications of Taylor, however, were done *sua sponte* by Spradlin and without any police action whatsoever, and so Taylor has no basis for arguing that they were "suggestive."  Even if they were somehow suggestive, they were not unreliable.

Finally, the Defendant seeks to preemptively block any in-court identifications of Taylor "by *any* witness" because it would be "tainted by the suggestive and unreliable out-of court identification." *Id.* at 1, 2. Because Spradlin's out-of-court identifications were neither suggestive nor unreliable, an in-court identification by Spradlin would not be tainted in any way. Furthermore, the Defendant has not identified any out-of-court identifications by any *other* witnesses, nor is the government aware of any, and so there is no basis for excluding their in-court identifications of Taylor.

### A.      The Officers' Pursuit of Taylor did not Constitute a *Terry* Stop.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. It has long been established, however, that not all interactions between the police and citizens amount to "seizures" of persons. *United States v. Mendenhall*, 446 U.S. 544, 552 (1980). "In the absence of physical force a seizure occurs only if (i) the officer makes a show of authority such that a reasonable person would not feel free to leave, and (ii) *the defendant submits to the officer's show of authority*." *United States v. Coley*, 464 F. Supp. 2d 487, 490 (D. Md. 2006) (citing *California v. Hodari D.*, 499 U.S. 621, 626–629 (1991) and *United States v. Lender*, 985 F.2d 151, 154 (4th Cir. 1993)) (emphasis added). Thus, if a person flees upon being approached by an officer, that person has not submitted to a show of authority by the officer and no seizure has occurred. *Hodari D.*, 499 U.S. at 629.

In *Hodari D.*, two officers on patrol came across a group of four or five youths huddled around a car parked at the curb. *Id.* at 623. The youths saw the officers' car approach, and the group dispersed. *Id.* One officer pursued the defendant on foot, and the second officer followed

in the patrol car.  *Id.*  Before the defendant was caught, he "tossed away what appeared to be a small rock."  *Id.*  Officers eventually tackled the defendant and recovered the rock, which was later determined to be crack cocaine.  *Id.*  The Supreme Court assumed that the officers' pursuit "constituted a 'show of authority' enjoining [the defendant] to halt," but the defendant "did not comply with that injunction and therefore was not seized until he was tackled."  *Id.* at 629.

Here, Taylor fled immediately after seeing the officers, and he later ignored Officer Rosier's commands to stop and show his hands.  Because Taylor refused to comply with any official show of authority, a seizure for Fourth Amendment purposes did not occur until the officers found and arrested Taylor.  In short, no *Terry* stop ever occurred, and the court need not analyze whether the officers had a reasonable suspicion that criminal activity may have been afoot.  *See United States v. Terry*, 392 U.S. 1, 30 (1968); *Hodari D.*, 499 U.S. at 629.

> **B.**    **Taylor Abandoned the Firearm and Ammunition Prior to His Seizure, and He is Therefore Precluded from Seeking Their Suppression.**

Taylor abandoned the firearm and ammunition, as well as any privacy interest he may have had in them, *before* he, the firearm, or the ammunition was seized, and so he has no standing to seek their suppression.  Even if Taylor somehow retained his privacy interest in the firearm and ammunition, the search for them was proper because it fell within the plain view exception to the warrant requirement.

> **1.**    **Taylor abandoned the firearm, the ammunition, and any privacy interest he may have had in those items before either he or those items were seized.**

The purpose of the exclusionary rule is to "effectuate the guarantees of the Fourth Amendment."  *Rakas v. Illinois*, 439 U.S. 128, 134 (1978).  Only defendants whose own Fourth Amendment rights have been violated may benefit from the protections of the exclusionary rule.

6

*Id.*  As a result, a defendant may assert a violation of the Fourth Amendment *only* if he had a

"legitimate expectation of privacy" in the place that was searched or the property that was

seized.  *Id.* at 143 (citing *Katz v. United States*, 389 U.S. 347, 353 (1967)).  "When a person

voluntarily abandons his privacy interest in property, his subjective expectation of privacy

becomes unreasonable, and he is precluded from seeking to suppress evidence seized from it."

*United States v. Stevenson*, 396 F.3d 538, 546 (4th Cir. 2005) (citing *United States v. Leshuk*, 65

F.3d 1105, 1111 (4th Cir. 1995)).[1]

 In *Hodari D.*, as described above in Part I.A., *supra*, the defendant abandoned suspected

crack cocaine prior to submitting to the officers' show of authority.  *See Hodari D.*, 499 U.S. at

629.  Since the defendant abandoned the contraband *before* he was seized, the Court concluded

that the contraband was "not the fruit of a seizure" and it could not be suppressed.  *Id.*

 A recent Fourth Circuit case, *United States v. Cureton*, 367 Fed. Appx. 434 (4th Cir.

2010) (unpublished), is also directly on point.  In *Cureton*, an officer told the defendant that he

wished to speak to him.  *Id.* at 436.  The defendant refused and then fled.  *Id.*  The officer

pursued the defendant on foot and yelled for the defendant to stop, but the defendant continued

running.  *Id.*  During the pursuit, the officer saw the defendant reach into the waistband of his

pants and grip an object as if he was "gripping the handle of a pistol."  *Id.*  The defendant then

ran around the corner of a building.  *Id.*  The officer eventually found the defendant in a nearby

---

[1] *See also Hodari D.*, 499 U.S. at 629; *United States v. Green*, 415 Fed. Appx. 451, 452
(4th Cir. 2011) (unpublished) (concluding that the firearm abandoned by the defendant prior to
his seizure was not subject to suppression); *United States v. Simmons*, 437 Fed. Appx. 215, 220
(4th Cir. 2011) (unpublished) (concluding that when the defendant discarded a firearm while
running from the police, he "abandoned any residual expectation of privacy he may have
harbored in respect to his possession of the firearm").

parking lot hiding under a truck, and the officer arrested him.  *Id.*  Officers later found a handgun under another truck in the lot.  *Id.*

The defendant moved to suppress the firearm.  *Id.* at 436.  The district court denied the defendant's motion, and the Fourth Circuit affirmed the district court's decision because "[a] defendant who flees the police in response to an assertion of authority has not been seized, and thus his Fourth Amendment rights are not implicated."  *Id.* at 437 (citing *Hodari D.*, 499 U.S. at 626, 629).  The Fourth Circuit concluded that, like the defendant in *Hodari D.*, the defendant "was not seized before or during his flight," and so the defendant "had not been seized at the time he abandoned the handgun."  *Id.* at 437–438.

In the present case, as in *Hodari D.* and *Cureton*, Taylor fled immediately after seeing the officers.  Assuming—as the Supreme Court did in *Hodari D.*—that the police pursuit of Taylor was a show of authority enjoining Taylor to stop, Taylor did not submit to that show of authority.  Instead, Taylor fled from the officers and refused to comply with Officer Rosier's order that he stop and show his hands.  Officer Riser observed Taylor holding a silver firearm in his hand during his flight, and when the officers found and arrested Taylor, they found a silver firearm and ammunition under the bushes a few feet away from where Taylor was hiding.  By abandoning the firearm and ammunition before he was seized, Taylor abandoned any reasonable expectation of privacy he may have had in the items. Consequently, Taylor has no standing to challenge the seizure of the firearm and ammunition, and his motion to suppress those items should be denied.  *See Stevenson*, 396 F.3d at 546.

> **2.**      **Any search for the firearm fell within the plain view exception.**

Even if Taylor *did* retain some expectation of privacy in the firearm and ammunition and

therefore has standing to challenge them, they were not the fruit of an improper search or seizure.

Although warrantless searches are generally *per se* unreasonable, there are "a few specifically established and well-delineated exceptions." *United States v. Williams*, 592 F.3d 511, 521 (4th Cir. 2010) (quoting *Mincey v. Arizona*, 437 U.S. 385, 390 (1978)).  One exception is the plain view doctrine, which "is grounded on the proposition that once police are lawfully in a position to observe an item first-hand, its owner's privacy interest in that item is lost; the owner may retain the incidents of title and possession but not privacy." *Illinois v. Andreas*, 463 U.S. 765, 771 (1983) (emphasis added).  Officers "may seize evidence in plain view during a lawful search if (1) the seizing officer is 'lawfully present at the place from which the evidence can be plainly viewed'; (2) the seizing officer has 'a lawful right of access to the object itself'; and (3) 'the object's incriminating character [is] . . . immediately apparent.' " *Williams*, 592 F.3d at 521 (quoting *United States v. Legg*, 18 F.3d 240, 242 (4th Cir. 1994)) (internal quotations omitted).

Here, each prong of that test has been satisfied.  First, the officers were standing in a public alley, and so they were "lawfully present at the place from which the evidence [could] be plainly viewed." *Williams*, 592 F.3d at 521.  Even if the area from which they observed the firearm was *private* property, the officers were permitted to briefly enter that property due to the exigent circumstances here: the need to locate the firearm that was used to rob Spradlin and that Officer Riser had observed.  *See Arizona v. Hicks*, 480 U.S. 321, 326 (1987) (concluding that officer is lawfully present and contraband may be seized if (1) "the initial intrusion that brings the police within plain view of such [evidence] is supported . . . by one of the recognized

exceptions to the warrant requirement, such as the exigent-circumstances intrusion" and (2) the

officer has probable cause to believe that item is contraband) (internal quotations omitted).

Second, the detectives had "a lawful right of access to the object itself." *Williams*, 592

F.3d at 521.  Because the handgun was in the same location where the officers were lawfully

present, and because the officers did not improperly "enter [another] premises to make a

warrantless seizure," the second prong is satisfied. *United States v. Davis*, 690 F.3d 226, 234

(4th Cir. 2012).

Finally, "the object's incriminating character [was] . . . immediately apparent." *Williams*,

592 F.3d at 521.  When the officers saw the firearm under the bush, they had probable cause to

believe that the firearm had been used in a robbery, and so its incriminating character was

"immediately apparent." *Id.*  Additionally, the officers were permitted to seize the weapon either

"for their own self-protection within the *Terry* rationale" or because they "were acting in a

community caretaker function when the gun was discovered." *See United States v. Bishop*, 338

F.3d 623, 627 (6th Cir. 2003).  Finally, after the gun had been seized, it "became contraband and

subject to seizure when the officers learned of the defendant's prior felony conviction." *Id.* at

628.

### C.      The Officers had Probable Cause to Arrest Taylor.

Taylor was not seized until he was arrested, and because the officers had probable cause

to believe that Taylor had committed or was committing a crime, that arrest was proper.  An

officer may make a warrantless arrest in public when the arrest is supported by probable cause.

*See Maryland v. Pringle*, 540 U.S. 366, 370 (2003); *United States v. Watson*, 423 U.S. 411,

416–424 (1976).  The probable cause standard is a nontechnical, common sense standard

"incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of circumstances." *Pringle*, 540 U.S. at 371. Probable cause to justify an arrest exists when the "facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person . . . in believing . . . that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979).

In assessing the totality of the circumstances, officers may draw from their practical experiences and may consider, among other things, "an individual's presence in a high-crime area coupled with his '[h]eadlong flight' upon noticing police." *United States v. Humphries*, 372 F.3d 653, 657 (4th Cir. 2004) (internal citation omitted). "[D]eliberately furtive actions and flight at the approach of strangers or law officers are strong indicia of mens rea" and "are proper factors to be considered in the decision to make an arrest." *Sibron v. New York*, 392 U.S. 40, 66–67 (1968). *See also United States v. Powell*, 886 F.2d 81 (4th Cir. 1989) (concluding that suspect's attempted flight from officers helped create probable cause for an arrest), *cert. denied*, 493 U.S. 1084 (1990).

In the present case, the facts and circumstances within the knowledge of the arresting officers gave them probable cause to believe Taylor had committed a crime. The arresting officers were patrolling the 1800 block of Rosedale Street, a high-crime area, when they saw Spradlin point at Taylor and say something like, "He robbed me, he robbed me, he pointed a gun at me!" Taylor then fled from the police officers. Officer Rosier ordered Taylor to stop and show his hands, but Taylor continued to flee. As Taylor ran across a field, Officer Riser saw Taylor holding a silver firearm in his hand. When the officers found Taylor, he was hiding face

down on the ground in an alley.  The facts and circumstances in this case were sufficient to

warrant the officers' belief that Taylor had committed a crime, and so the officers had probable

cause to arrest Taylor.  *See Pringle*, 540 U.S. at 370.

> **D.      The Officers Conducted a Proper Search Incident to Taylor's Lawful Arrest.**

Incident to a lawful arrest, officers may conduct a full search of the arrestee, regardless of

whether he is suspected of possessing weapons or evidence pertaining to the offense for which

he is being arrested.  *United States v. Robinson*, 414 U.S. 218, 234–235 (1973).  In this case,

incident to Taylor's lawful arrest, *see* Part I.C., *supra*, officers Riser and Rosier conducted a

search of Taylor's pockets and recovered several items, including currency, a knife, and two

ziploc bags of green, plant-like material.  Because those items were properly seized during a

search incident to a lawful arrest, Taylor's motion to suppress those items should be denied.

> **E.      Spradlin's Out-Of-Court Identifications of Taylor Were Neither
> Impermissibly Suggestive Nor Unreliable.**

Taylor has also (1) moved to suppress Spradlin's out-of-court identifications of Taylor

and (2) moved to exclude any in-court identification of Taylor "by *any* witness."[2]  *See* Motion to

Suppress Out-Of-Court and In-Court Identification (ECF 20) (emphasis added).  The court

should deny both requests.

> **1.      Spradlin's out-of-court identifications of Taylor were not suggestive
> nor unreliable, and so they should not be suppressed.**

Identification evidence is admissible unless, based on the totality of the circumstances,

the identification process was impermissibly suggestive and the identification was unreliable.

---

[2] As explained below, the Government presumes that Taylor is seeking to prevent in-court identifications by only those witnesses who participated in an unconstitutionally suggestive out-of-court identification procedure.  *See* n.6, *infra*.

*Neil v. Biggers*, 409 U.S. 188, 199–200 (1972); *Stanley v. Cox*, 486 F.2d 48, 50 and 51 n.7 (4th Cir. 1973).  An identification procedure is impermissibly suggestive only when "a positive identification is likely to result from factors other than the witness's own recollection of the crime."  *Satcher v. Pruett*, 126 F.3d 561, 566 (4th Cir. 1997).

In the present case, Spradlin made two distinct identifications of Taylor *without any request by the officers*.  First, when the officers turned onto Rosedale Street, Spradlin identified Taylor by pointing at him and stating something to the effect of, "He robbed me, he robbed me, he pointed a gun at me!"  The officers quickly arrested Taylor, and Spradlin was then able to confirm his initial identification.  Second, while Taylor was being placed under arrest, Spradlin pointed at Taylor and said something like, "He's the one, he robbed me."[3]

Both identifications were done *sua sponte* by Spradlin and without any action by the officers at all.  Because the officers did not act in any way, Taylor cannot claim that the officers caused either identification to be "suggestive" or unreliable.  *Biggers*, 409 U.S. at 380.

Taylor may attempt to argue that Spradlin's second identification somehow constituted a "show-up" identification.  *Stanley*, 486 F.2d at 50.  If it did constitute a "show-up" identification, it was entirely proper.  While "show-up" identifications could be suggestive in some circumstances, "there is no *per se* rule that they are violative of constitutional rights."  *Id.*  In fact, courts have consistently determined that prompt show-up identifications are not impermissively suggestive.  *See id.* at 51; *see Willis v. Garrison*, 624 F.2d 491, 493–494 (4th

---

[3] In one paragraph, Taylor's Motion refers to a "photographic identification procedure." Motion to Suppress Out-Of-Court and In-Court Identification at ¶ 6.  In this case, however, there was no photographic identification.  Instead, Spradlin identified Taylor—on two different occasions and without any request by the police officers—in person, near the crime scene, and shortly after the crime occurred.

13

Cir. 1980) (quoting *United States v. Wilson*, 435 F.2d 403, 405 (D.C. Cir. 1970)) ("prompt,

on-the-scene identifications are likely to promote fairness, by enhancing reliability of the

identifications, and permit expeditious release of innocent subjects").

The Fourth Circuit has recently reiterated that a "show-up" identification is permitted if

several factors are present:

> [W]hen one-man confrontations occur promptly after the commission of a crime, the
> police have obtained a good description of the offender, and the show-up is completed
> under circumstances where it is important to continue the search for the real culprit
> promptly if he has not been apprehended, they are likely not suggestive.

*United States v. Porter*, 338 Fed. Appx. 300, 305 (4th Cir. 2009) (unpublished) (citing *Smith v.*

*Coiner*, 473 F.2d 877, 881 (4th Cir. 1972)).

Under those factors, the second identification of Taylor was not unnecessarily suggestive

even if Taylor was in handcuffs at the time.[4]  First, it occurred just minutes after the crime.

Second, the officers had more than a mere *description* of Taylor—instead, Spradlin had

specifically pointed Taylor out to the officers before Taylor fled.  Third, Spradlin made the

second identification either while the officers were in the process of arresting Taylor.  Finally,

based on Spradlin's statement that the suspect had robbed him with a firearm, the officers were

operating under "circumstances where it [was] important to continue the search for the real

culprit promptly if he has not been apprehended."  *Id.* at 305.

Even assuming *arguendo* that the second identification was unconstitutionally

suggestive, "reliability is the linchpin in determining the admissibility of identification

---

[4] *See United States v. Porter*, 338 Fed. Appx. 300, 305 (4th Cir. 2009) ("although [the
defendant] was in handcuffs, this characteristic did not predominate in the identifications and did
not play a conclusive role in the positive identifications").

testimony." *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977).  As a result, if the identification

was unconstitutionally suggestive but was nonetheless *reliable* under the totality of the

circumstances, it would still be admissible.  *Holdren v. Legursky*, 16 F.3d 57, 61 (4th Cir. 1994).

The Supreme Court has identified five factors to consider in determining whether an

identification is reliable:  "the opportunity of the witness to view the criminal at the time of the

crime, the witness'[s] degree of attention, the accuracy of his prior description of the criminal,

the level of certainty demonstrated at the confrontation, and the time between the crime and the

confrontation."  *Manson*, 432 U.S. at 114.

        In the present case, all five factors favor admission of the identification testimony.  First,

Spradlin had a clear opportunity to view Taylor because he directly interacted with Taylor in

close proximity and in broad daylight.  Second, Spradlin's degree of attention was high because

he was conducting a one-on-one transaction with Taylor.  Third, Spradlin provided more than a

mere *description* of Taylor; while the officers were watching, Spradlin pointed directly at

Taylor—without any suggestion or request by the officers—and stated something like, "He

robbed me, he robbed me, he pointed a gun at me!"  Fourth, Spradlin identified Taylor without

any hesitation, indicating that he was certain that Taylor committed the robbery.  Finally, the

identification occurred within minutes of the crime while Spradlin's memory of the robbery was

fresh.  Therefore, even if the officers *did* somehow suggest that Spradlin should identify

Taylor—which they did not—then Spradlin's identifications of Taylor were nonetheless reliable

under the totality of the circumstances and therefore admissible.  *Legursky*, 16 F.3d at 61.

     2.     **The court should deny Taylor's preemptive motion to prevent an in-court identification of Taylor "by any witness."**

The court should also deny Taylor's request to "bar[] the government from admitting . . . all evidence of any subsequent in-court identification of [the Defendant] that may be made by *any* witness." Motion to Suppress Out-Of-Court and In-Court Identification (ECF 20) at 4 (emphasis added). Taylor offers only one reason for this request: "because such an in-court identification will be fatally tainted by the suggestive and unreliable out-of-court identification procedures to which the witness was previously subjected." *Id.* at 2.[5]

Taylor "bears the burden of proof on a challenge of the admissibility of identification testimony." *United States v. Johnson*, 114 F.3d 435, 441 (4th Cir. 1997). The Supreme Court has stated that an eyewitness identification at trial following a pretrial identification should be prevented only when "identification procedure is so impermissibly suggestive as to give rise to the very substantial likelihood of misidentification." *Id.* at 441. Because the exclusion of evidence from the jury is a "drastic sanction," identification testimony may be blocked only when the testimony is "manifestly suspect." *Harker v. Maryland*, 800 F.2d 437, 443 (4th Cir. 1986).

As explained in Part I.E.1., *supra*, Spradlin's out-of-court identifications of Taylor were not suggestive, nor were they unreliable. For that reason, an in-court identification by Spradlin would not be tainted by Spradlin's previous identifications. Furthermore, Taylor has not

---

[5] The Government interprets Taylor's request as seeking to preclude in-court identifications by any witness *who previously made an out-of-court identification* following an unconstitutionally suggestive identification procedure. Taylor does not provide any basis for excluding an in-court identification by a witness who *never* participated in an unconstitutionally suggestive out-of-court identification procedure, nor would such a basis exist.

identified any other out-of-court identification procedures that would have tainted in-court identifications by other witnesses.  In short, Taylor has failed to meet his burden of proof, and so the court should deny Taylor's motion to block in-court identification testimony by any witness. *See Johnson*, 114 F.3d at 441.

## Conclusion

Taylor's various motions should be denied.  First, Taylor did not submit to the officers' authority and therefore was not "seized" for Fourth Amendment purposes until the officers found him and properly arrested him.  For that reason, the court need not determine whether the officers had reasonable suspicion to justify a *Terry* stop.  Second, prior to being seized, Taylor abandoned any expectation of privacy he may have had in the firearm and ammunition, and he is thus precluded from seeking suppression of those items.  Third, the officers had probable cause to arrest Taylor based on several facts, including Spradlin's statement that Taylor had just pointed a gun and robbed him, Taylor's unprovoked flight from the officers in a high-crime area, and Officer Riser's observation of a silver handgun in Taylor's hand.  Fourth, Spradlin's two identifications of Taylor were neither impermissibly suggestive nor unreliable, and they should not be suppressed.  Finally, Taylor has failed to meet his burden of proving that an in-court identification by Spradlin—or "any witness," as suggested by Taylor—would be "tainted" by prior out-of-court identifications.

The government respectfully submits that, for these reasons, the Defendant's various motions should be denied.

17

Respectfully submitted,

Rod J. Rosenstein
United States Attorney

By:     /s/ Scott A. Lemmon
        Scott A. Lemmon
        Assistant United States Attorney
        36 South Charles Street, Fourth Floor
        Baltimore, Maryland 21201
        (410) 209-4831


**Certificate of Service**

I hereby certify that on this 12th day of July, 2013, a copy of the foregoing

Government's Response to Defendant's Pretrial Motions To Suppress Evidence and Exclude

Trial Testimony was electronically filed with the Clerk of the District Court and by that means

served upon counsel for the defendant.


        /s/ Scott A. Lemmon
        Scott A. Lemmon
        Assistant United States Attorney